344 So.2d 135 (1977)
W. Karl THOMPSON
v.
COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY.
No. 49175.
Supreme Court of Mississippi.
March 30, 1977.
*136 Charles R. Wilbanks, Corinth, for appellant.
Price & Krohn, James E. Price, Corinth, for appellee.
Before PATTERSON, P.J., and ROBERTSON and BROOM, JJ.
BROOM, Justice, for the Court:
Preexistence of an illness or sickness was the ground upon which the trial judge by peremptory instruction exonerated Commercial Insurance Company of Newark, New Jersey (appellee) from liability upon its medical insurance policy. The Alcorn County Circuit Court ruled that no jury issue was raised because the insured child's "symptoms have existed ever since shortly after the child was born... ." We reverse.
FACTS: The policy insured Savannah Thompson (and her family) against such "sickness or disease which commences and causes loss while this policy is in force... ." Her father, W. Karl Thompson, a dentist (appellant), was issued the policy by the insurer (appellee) in February 1972 when Savannah was eleven years old. At birth Savannah's umbilical cord was wrapped around her neck three times. While less than three years old, she exhibited fretfulness, and prior to school age was found to be hyperactive, requiring medication. In early years she was diagnosed as a slow learner and entered school in an EMR (educable mentally retarded) class where she remained three years. When placed into a regular classroom, her hyperactive condition worsened; she had a very short attention span, and frequently daydreamed.
Beginning in June 1972, Savannah was hospitalized for approximately two years at Angie Nall Hospital, Beaumont, Texas. Her father's application for the policy did not indicate that she had any mental abnormality. His testimony was that he considered her problem educational rather than medical. No argument or suggestion is made that he was guilty of fraudulent misrepresentation, withholding or concealing any fact or circumstance relating to Savannah's condition or history.
Dr. Leonard A. Toomin, a specialist in pediatrics (Director of Angie Nall Hospital), examined Savannah in June 1972. He found her with almost all (25 of a possible 32) the symptoms of the typical child with minimal brain dysfunction syndrome. His opinion was that her condition had existed several years prior to his examination. Other medical doctors (including a pediatrician) saw Savannah on previous occasions, but the record does not show that anyone made the syndrome diagnosis until Dr. Toomin pronounced it. Dr. Roscoe Boyer, teacher of educational psychology and special education at University of Mississippi, gave Savannah three tests when she was eleven years old (her birth date was August 23, 1961) and found her developmental age to be six and a half years. She was enrolled in the third grade at a first grade reading level, and had an IQ of 67. Miss Peggie McDonald was Savannah's special education teacher in an EMR class of 1970-71. McDonald stated that the child could not perform classroom work expected of a child of her age.
Upon these facts, and after both sides rested, the trial judge granted the defense a peremptory instruction on the ground that the condition for which Savannah was hospitalized preexisted issuance of the policy.
Appellant argues that the trial court erred in holding (upon the insurer's demurrer) that the plaintiff (appellant) must allege in his declaration that the illness for which recovery of medical expenses is sought was contracted while the policy was in force. By amending his declaration *137 appellant waived any procedural error in this regard. Montgomery v. Dillingham, 11 Miss. 647, 3 Smedes & Marshal 647 (1844); Mitchell v. Film Transit Co., 194 Miss. 550, 13 So.2d 154 (1943); 71 C.J.S. Pleading § 320c (1951); 4 C.J.S. Appeal and Error § 212c (1957). In our jurisprudence the defense based upon the proposition that the illness preexisted the effective date of the policy is generally an affirmative defense. Blue Cross & Blue Shield of Mississippi, Inc. v. Mosley, 317 So.2d 58 (Miss. 1975); American Life Ins. Co. v. Walker, 208 Miss. 1, 43 So.2d 657 (1949). The question of procedure as to who must bear the burden of proof as to the alleged preexistence of the illness or disease is without significance in this case which was taken from the jury after both sides rested. Before resting, both sides put on proof without undue restriction and it is not made to appear that the appellant was prejudiced by having to bear the burden of proof with reference to the matter of the preexistence of Savannah's illness.
Appellant contends he presented sufficient evidence to warrant a jury trial. In deciding whether the peremptory instruction was proper, we will accept the testimony of the appellant as true along with all reasonable inferences in his favor which may be drawn from the evidence. On the issue of preexisting disease, Blue Cross & Blue Shield of Mississippi, Inc. v. Mosley, 317 So.2d 58, 61 (Miss. 1975), held that:
[T]he ailment or disease will ordinarily be deemed to exist when a distinct symptom, ailment or condition manifests itself from which a doctor can with reasonable accuracy diagnose the disease... .
In Mosley the doctor not only found symptoms of Mrs. Mosley's disease but accurately diagnosed her illness prior to the effective date of policy coverage. The record before us reveals that many of the symptoms of Savannah's illness (minimal brain dysfunction) were noticed but not accurately diagnosed during her infancy and early childhood. However, it is clear that the proof showed her condition was not finally and accurately diagnosed until Dr. Toomin made the diagnosis in June 1972 when he performed an EEG (electro-encephalogram) which revealed an abnormality  a convulsive disorder of the petit mal type. Such abnormality was not revealed by the prior EEG of another doctor.
This record demonstrates that several distinct symptoms of Savannah's minimal brain dysfunction syndrome were manifested prior to the effective date of the policy. The record shows also that she was seen by each of the following: her general practitioner, her pediatrician, and by a teacher of educational psychology, but none of them made an accurate diagnosis prior to the policy's effective date. Dr. Toomin, a specialist in a very narrowly defined field, made such diagnosis in June 1972. We hold the case should be submitted to a jury with appropriate instructions to apply our definition of preexisting illness in Mosley to this case. Accordingly, we must reverse and remand for a new trial consistent with this opinion.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and LEE, JJ., concur.